PETER SCANNELL *vs.* ATTORNEY GENERAL & another.[1]

No. 06-P-1151.

Suffolk. March 20, 2007. - August 31, 2007.

Present: DUFFLY, DREBEN, & MEADE, JJ.

*Massachusetts False Claims Act. Unjust Enrichment.*

A Superior Court judge properly dismissed a plaintiff's action seeking a judg-
ment declaring that the Commonwealth was required, under the Mas-
sachusetts False Claims Act, G. L. c. 12, §§ 5A-5O, to pay him a bounty
due to his role in reporting information that his employer was engaging in
investment practices that were defrauding the Commonwealth, where the
plaintiff's failure to file a qui tam action against his employer on behalf of
the Commonwealth or its subdivisions precluded such recovery [48-52];
moreover, the plaintiff failed to demonstrate that he was entitled to recover
on the basis of alternative equitable theories [52-53].

CIVIL ACTION commenced in the Superior Court Department on
July 5, 2005.

A motion to dismiss was heard by *Christopher J. Muse*, J.

*Robert C. Autieri* for the plaintiff.

*Mary O'Neil*, Assistant Attorney General, for the defendants.

DUFFLY, J. A judge of the Superior Court allowed the
defendants' motion to dismiss Peter Scannell's claim for a judg-
ment declaring that he is entitled to be paid a bounty under the
Massachusetts False Claims Act (MFCA), G. L. c. 12, §§ 5A-
5O, inserted by St. 2000, c. 159, § 18, because of his role in
uncovering fraudulent practices by Putnam Investments, Inc.
(Putnam). We agree with the motion judge's reasoning, set forth
in a thoughtful memorandum of decision, that Scannell's failure
to file a qui tam action against Putnam on behalf of the Com-
monwealth or its subdivisions precludes recovery under the

[1]Commonwealth of Massachusetts.

MFCA. We also conclude that Scannell is not entitled to recover on the basis of his asserted equitable theories.[2]

1. *Background.* We take as true the allegations set out in Scannell's amended complaint, drawing inferences therefrom and resolving doubts in his favor. See *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998).

In 2000, while Scannell was working as a call center service representative for Putnam, he became aware that his employer was engaging in "market-timing" activity and excessive short-term trading with respect to a particular fund. As described in Scannell's complaint, "[m]arket-timing is frequent trading by short-term investors hoping to exploit fund share prices that lag behind the value of underlying securities assets." Although that practice is not itself illegal, mutual fund advisors have a duty to treat investors equally. Market-timing detrimentally affects long-term investors, and Putnam misrepresented in its prospectus that it did not engage in the activity.

Scannell transferred to another Putnam division as a broker in December, 2001, and there learned that the company allowed certain preferred investors to engage in market-timing and reap the benefits, and that some fund managers also profited. He became aware that among Putnam clients that stood to be harmed by the market-timing were several Massachusetts municipalities and a State-run institutional investor. Concerned, Scannell conducted research and acquired information about increased market-timing activity at Putnam and confronted his superiors with this information, but they did nothing to curtail the practices.

Scannell resolved to report Putnam's activities to the appropriate authorities and retrieved incriminating data from company computers. In September, 2003, represented by an attorney, Scannell gave the data he had amassed to the Office of the Secretary of the Commonwealth, Securities Division (Secretary of State). Based on this evidence, the Secretary of State commenced an

[2]We note that no judgment of dismissal appears to have been entered in the trial court. It also does not appear that the appellant was granted leave to file an interlocutory appeal. In our discretion, we reach the merits of issues briefed by the parties and addressed by the motion judge. See *Lewis* v. *Emerson*, 391 Mass. 517, 519-520 (1984).

investigation that led to the filing of an administrative complaint against Putnam. The Federal Securities and Exchange Commission then also filed a complaint against the company on the same grounds in Federal Court. Both actions were settled with Putnam acknowledging wrongdoing. In the settlement and consent order entered into between the Secretary of State and Putnam, Putnam agreed to pay a $50 million fine to the Commonwealth in addition to restitution to investors that had suffered losses attributable to the illegal activities. The amount due to investors was eventually determined to be $88.5 million. In the parallel Federal Court action, Putnam agreed to pay $55 million in restitution and penalties. All told, Putnam paid a total of $193.5 million to settle the two cases.

In July, 2005, Scannell commenced the within action against the Attorney General and the Commonwealth claiming, in essence, that he is entitled under provisions of the MFCA to a percentage of the total $193.5 million recovery from Putnam.[3] The amended complaint also alleges that as a result of his efforts leading to exposure of Putnam's practices, Scannell incurred serious head injuries, developed significant emotional trauma and stress for which he requires medical care, became unemployable within the securities industry, and suffered a significant loss in earning capacity and salary. As additional bases for relief, the amended complaint seeks recovery under a theory of unjust enrichment and asserts equitable remedies of restitution and constructive trust.

The defendants' motion to dismiss was allowed "as to all claims." Scannell's motions for reconsideration and clarification were denied, and he filed this appeal.

2. *Discussion. Claims under the MFCA.* The MFCA encourages individuals with direct and independent knowledge of information that an entity is defrauding the Commonwealth to come forward by awarding to such individuals a percentage of the Commonwealth's recovery from the defrauding entity. See G. L. c. 12, §§ 5A, 5C(2), 5F. To be entitled to the bounty, an individual in possession of such knowledge must attain the

---

[3] Of this amount, the $55 million Putnam paid on account of the Federal Court action was presumably pursuant to the Federal False Claims Act. See 31 U.S.C. §§ 3729 et seq. (2003).

status of a "relator" by filing suit against the defrauding entity in Superior Court in the name of the Commonwealth or a subdivision thereof. See G. L. c. 12, § 5C(2). See also G. L. c. 12, § 5A, defining "[r]elator" as "an individual who brings an action under paragraph (2) of section 5C." Such an action is also referred to as a "qui tam" action. "This is a Latin expression which translates in full into 'who sues on behalf of the king as well as for himself.' It is an action brought by an informer sometimes called a 'whistle blower.' His motive is to expose and redress a wrong, generally a fraud or false claim against the government and also to collect his bounty for his action." Nolan & Sartorio, Equitable Remedies § 476A, at 139 (2d ed. 2003 & Supp. 2006). See *United States ex rel. Lu* v. *Ou*, 368 F.3d 773, 774 (7th Cir. 2004).[4]

The complaint must be filed under seal and a copy served on the Attorney General along with "written disclosure of substantially all material evidence and information the relator possesses." G. L. c. 12, § 5C(3).[5] The complaint remains under seal for 120 days (or longer, if the court grants extensions as provided in the statute), during which time the Attorney General may elect to intervene on behalf of the Commonwealth or a political subdivision. *Ibid.* This period affords the Attorney General the opportunity to assess the merits of the qui tam action and determine how best to proceed. See *United States ex rel. Williams* v. *Bell Helicopter Textron Inc.*, 417 F.3d 450, 455 (5th Cir. 2005). Before the expiration of this 120-day period (or any extensions thereof), the Attorney General must either "assume control of the action, in which case the action shall be conducted by [her]," or "notify the court that [she] declines to take over the action, in which case the relator shall have the right to conduct the action." G. L. c. 12, § 5C(4).

---

[4]There is little decisional law interpreting the MFCA, and its legislative history is scant. However, the MFCA was modeled on the similarly worded Federal False Claims Act, 31 U.S.C. §§ 3729 et seq. See Davidson, Governmental Responses to Elder Abuse and Neglect in Nursing Homes: The Criminal Justice System and the Civil False Claims Act, 12 Elder L.J. 327, 351 n.183 (2004). Therefore, we look for guidance to cases and treatises interpreting the Federal False Claims Act. See *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 611 (1980).

[5]Service on the Attorney General must be conducted in accordance with Mass.R.Civ.P. 4(d)(3), as amended, 370 Mass. 918 (1976). G. L. c. 12, § 5C(3).

"If the attorney general proceeds with the action, [she] shall have primary responsibility for prosecuting the action, and shall not be bound by any act of the relator," who shall have the right to continue as a party. G. L. c. 12, § 5D(1). Upon a showing by the Attorney General, the court may restrict the relator's involvement, such as by placing limits on the number of witnesses the relator may call, or "otherwise limiting the participation by the relator in the litigation." G. L. c. 12, § 5D(4). Notwithstanding any objection by the relator, the Attorney General may enter into a settlement that is determined by the court to be "fair, adequate and reasonable" or "may dismiss the action." G. L. c. 12, § 5D(2)-(3).

Even if the Attorney General declines initially to intervene in the action, she may monitor the qui tam suit and has the right to receive copies of all pleadings and deposition transcripts. G. L. c. 12, § 5D(6). On a showing of good cause, a court may permit the Attorney General to intervene at a later date. *Ibid.* If the Attorney General decides against intervention, the relator then prosecutes the action, but any recovery is still subject to the provisions of the MFCA. See G. L. c. 12, § 5F.

The MFCA further subordinates the interests of a would-be relator to those of the Commonwealth, the real party in interest, by placing restrictions on the ability of a would-be relator to file a qui tam lawsuit. For example, no person may bring a qui tam complaint predicated on information that is already the subject of a civil suit or administrative proceeding to which the Commonwealth is a party, see G. L. c. 12, § 5G(2), and no court has subject matter jurisdiction over an action brought by a relator based upon publicly disclosed allegations or transactions, unless the relator is an "original source of the information" that forms the foundation of the action. G. L. c. 12, § 5G(3).

Because Scannell has failed to establish that he is a relator pursuant to G. L. c. 12, § 5A, we reject his claim that he is entitled to enforcement of the bounty provision of the MFCA. See G. L. c. 12, § 5F(1).[6] The words of the statute plainly reflect that the bounty is available only to a person who has filed in

_____

[6] "If the attorney general proceeds with an action brought by a relator pursuant to section 5C, the relator shall receive at least 15 per cent . . . of the proceeds recovered and collected in the action or settlement" subject to ad-

Superior Court an action under seal in the name of the Commonwealth or its subdivisions and has served upon the Attorney General a copy of the complaint and all supporting information in accordance with the statute. See G. L. c. 12, §§ 5A et seq. See also *Walburn* v. *Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005) (would-be relators must place government on notice of essential facts of case by service of the qui tam complaint on the government). Because Scannell failed to bring a qui tam suit against Putnam in Superior Court on behalf of the Commonwealth or its subdivisions in accordance with the provisions of the MFCA, he is precluded from receiving a portion of the settlement proceeds recovered by the defendants in settlement of proceedings initiated by them.

We disagree with Scannell's assertion that our conclusion contradicts the legislative intent of the statute. The history of the analogous Federal False Claims Act's qui tam provisions demonstrates attempts by Congress to balance competing policies: (1) "to encourage 'whistleblowers to act as private attorneys-general' in bringing suits for the common good . . . [, and (2)] to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud." *Walburn* v. *Lockheed Martin Corp.*, 431 F.3d at 970 (citations omitted). These goals are promoted by the requirement that individuals seeking to recover a bounty must first file suit and be prepared to prosecute the action to conclusion. See Sylvia, The False Claims Act: Fraud Against the Government § 1:12, at 13-15 (2004); Androphy, Federal False Claims and Qui Tam Litigation § 2.02 (2d ed. 2007). The requirement involves individuals in the prosecution of claims, increasing the likelihood that "the Government does not neglect evidence, cause

ditional conditions set forth in the statute. G. L. c. 12, § 5F(1). If the court finds that the action is based primarily on information other than that provided by the relator, "the court may award such sums as it considers appropriate, but in no case more than 10 per cent of the proceeds, taking into account the significance of the information and the role of the relator bringing the action in advancing the case to litigation." G. L. c. 12, § 5F(2). "If the attorney general does not proceed with an action pursuant to section 5C [of the MFCA], the relator bringing the action or settling the claim shall receive . . . not less than 25 per cent nor more than 30 per cent of the proceeds" collected on behalf of the Commonwealth, as well as reasonable attorney's fees and costs. G. L. c. 12, § 5F(4).

undu[e] delay, or drop the false claims case without legitimate reason," and frees up governmental resources.[7] S. Rep. No. 99-345, 99th Cong., 2d Sess., at 26 (1986), reprinted in 1986 U.S.C. C.A.N. 5266, 5291. See Sylvia, *supra* § 2.9, at 53-54.

Permitting a person in Scannell's position to share in the settlement proceeds against Putnam would effectively eliminate the qui tam lawsuit requirement and undermine the foregoing objectives, all of which are reflected in the statutory framework of the MFCA. The requirement of filing suit is no mere technicality, and Scannell, "[a] person who did not satisfy the requirements of [the statute] in bringing a qui tam action[,] can not share in a subsequent government recovery." *Stinson, Lyons & Bustamante, P.A.* v. *United States*, 79 F.3d 136, 138 (Fed. Cir. 1996). See *ibid.* ("[w]e do not share [the] view that it is not necessary to be a relator in order to share in a recovery obtained under the False Claims Act"); *Donald* v. *University of Cal. Bd. of Regents*, 329 F.3d 1040, 1044 (9th Cir. 2003) (private party "has a legal right to recovery only from a qui tam action brought pursuant to [the False Claims Act]"). See also *United States ex rel. Green* v. *Northrop Corp.*, 59 F.3d 953, 965-969 (9th Cir. 1995) (courts should construe the False Claims Act to encourage the bringing of qui tam lawsuits).

We also reject Scannell's claims that he is entitled to recover because the Commonwealth elected to prosecute its claims against Putnam through administrative proceedings, an "alternate remedy" pursuant to G. L. c. 12, § 5E.[8]

*Other claims.* We similarly reject Scannell's claims for re-

---

[7]"Most obviously, public resource scarcity typically requires an executive agency charged with enforcing the law to assess not only 'whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action . . . best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.' " Caminker, The Constitutionality of Qui Tam Actions, 99 Yale L.J. 341, 359 (1989), quoting from *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985).

[8]Section 5E of G. L. c. 12 provides, in pertinent part:

"Notwithstanding the provisions of section 5C, the attorney general may elect to pursue its claim through any alternate remedy available to the attorney general . . . . If any such alternate remedy is pursued in another proceeding, a relator shall have the same rights in such proceed-

covery under a theory of unjust enrichment and other equitable remedies. "The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party." *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985). Because Scannell never attained relator status and therefore was not entitled to a bounty, his complaint fails to allege a cognizable detriment.[9] See *Santagate* v. *Tower*, 64 Mass. App. Ct. 324, 329 (2005) ("equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law"). Injury to the Commonwealth, not Scannell, gave rise to the Commonwealth's action and eventual recompense. See *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U.S. 765, 772-773 (2000) (qui tam relator has "a concrete private interest in the outcome of [the] suit" but that interest is the same as that of "someone who has placed a wager upon the outcome. . . . A qui tam relator has suffered no [personal harm]").[10]

---

ing as said relator would have had if the action had continued under said section 5C."

The "alternate remedy" cases relied on by Scannell for the proposition that he is entitled to a bounty pursuant to § 5E are inapposite. In neither case was the relator status of the plaintiff at issue. Thus, the cases do not stand for the proposition that a whistleblower may recover a bounty where a qui tam suit was never filed. See *United States ex rel. Bledsoe* v. *Community Health Sys., Inc.*, 342 F.3d 634, 650 (6th Cir. 2003) ("a threshold requirement for a relator's ability to share in the proceeds of a [False Claims Act] lawsuit is to file a valid qui tam action"); *United States vs. Bisig*, U.S. Dist. No. 100CV335-JDTWTL (S.D. Ind. Dec. 21, 2005).

[9]Scannell's "takings" claim fails for the same reason. Cf. *Ram* v. *Charlton*, 409 Mass. 481, 490, cert. denied, 502 U.S. 822 (1991) (notice requirements of statutes providing exclusive remedy against public entities for defects in public ways did not "deprive the plaintiff of property without due process of law . . . . Before the statutes were enacted, all [such] claims . . . were barred by the doctrine of sovereign immunity. When the Legislature waived this immunity, . . . it established limitations and conditions on that waiver. . . . The . . . notice requirement was one such limitation").

[10]Scannell alleges that he has suffered physical and emotional harm as a result of his involvement in this matter and, further, that his involvement has had a negative impact on his career and earning capacity. We do not reach the question whether these allegations set forth claims against Putnam, which was not made a party to this action. See, e.g., G. L. c. 12, § 5J (creating cause of action for employees against employers who retaliate against whistle blowers).

3. *Conclusion.* The order granting the defendants' motion to dismiss is affirmed, and judgment shall enter accordingly.

*So ordered.*