Fishman, Kenneth J., J.
The plaintiff, Thomas Williams, filed this action after the defendant, Office Depot, Inc., terminated him as part of a 2008 reduction in force. Williams asserts the following claims against Office Depot: breach of the implied covenant of good faith and fair dealing (count I); unjust enrichment (count II); and age discrimination under G.L.c. 15IB, §4 (count III). The action is now before this Court on Office Depot’s motion for summary judgment. After hearing, and upon review, the motion is ALLOWED.
BACKGROUND
The facts, taken from the summary judgment record and viewed in the light most favorable to the plaintiff, are as follows. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982). In January 2006, Williams accepted Office Depot’s offer of a Business Development Manager III position (“BDM3”). Williams was responsible for bringing in new business in eastern Massachusetts, and he was based at Office Depot’s Marlborough, Massachusetts office. At the time Office Depot offered him the BDM3 position, Williams was over forty years of age, a fact known to Pamela Pedler, Regional Sales Director for New England, who made the decision to hire Williams. There was another BDM3 at the Marlborough office, Michael Towle, who had been with Office Depot since 1998 and was responsible for new business in northern New England.
In the spring of 2008, Office Depot needed to reduce its payroll and decided to cut back on its sales force with a reduction in force (“RIFj. Pedler was responsible for determining whom in her region would be terminated under the RIF. On her recommendation, Office Depot terminated eleven people, including Williams and Christopher Komst, a District Sales Manager (“DSM”). At the time of his termination, Komst was thirty-seven years old and had been employed with Office Depot since 1996. Pedler decided to retain Towle, the other BDM3 at Office Depot’s Marlborough office, because he had received better performance evaluations than Williams from Jeffrey Friedgen, the Marlborough office DSM, was ranked higher in sales numbers than Williams amongst BDM3s nationally, and had been with Office Depot for ten years longer than Williams.
As part of the RIF, Pedler created a new position, Account Manager III Hybrid (“AM3H”), a hybrid between business development and account management, which would take on some of the duties that Williams as BDM3 previously held. Pedler created the position with Komst in mind, hoping that he would fill *264 it after being terminated as DSM. However, at a meeting with employees subject to the RIF,' including Williams, Pedler informed them of the new AM3H position and encouraged them to apply for it. While Williams expressed an interest in applying for the AM3H position, Komst was the only person who actually applied for the job. After interviewing him, Pedler hired Komst for the AM3H position at an annual base salary of $80,000.00, which was less than his DSM salary.
When Office Depot terminated Williams as part of the RIF, his annual base salary was approximately $67,000.00. In addition to this salary, Williams was eligible to receive bonus payments under his 2008 Business Solutions Division Incentive Compensation Plan (“Incentive Plan”). Under the Incentive Plan, Williams would receive bonus payments on a quarterly basis if he met two thresholds: eighty-five percent of his year-to-date sales quota and ninety-four percent of his initial mark up quota. During his tenure with Office Depot, Williams achieved these threshold quotas only once, receiving a $27,348.00 bonus payment for the first quarter of 2008 as a result of bringing in an office supplies contract with Millipore Corporation (“Millipore contract”). Williams was working on approximately $30 million in potential business when Office Depot terminated him as part of the RIF.
DISCUSSION
I. Summary Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmov-ing party has no reasonable expectation of proving an essential element of its case at trial. See Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the exstence of a genuine issue of material fact in order to defeat [the] motion.” See Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the non-moving party, but does not weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II. Williams’ Claims
A. Breach of the Implied Covenant of Good Faith and Fair Dealing
Under Massachusetts law, an employer is liable for a breach of the covenant of good faith and fair dealing if it terminates an employee (1) in bad faith by seeking to deprive him of a commission due or about to be due or (2) without good cause but in good faith, resulting in the loss of compensation related to the employee’s past services. See King v. Driscoll, 424 Mass. 1, 6-7 (1996); York v. Zurich Scudder Invs., Inc., 66 Mass.App.Ct. 610, 616 (2006). The first type of good faith and fair dealing claim is often referred to as a Fortune claim, while the second is known as a Gram claim. See Fortune v. National Cash Register Co., 373 Mass. 96 (1977); Gram v. Liberty Mut. Ins. Co., 384 Mass. 659 (1981) (Gram I).
Williams asserts a Fortune claim based on his allegation that Pedler included him in Office Depot’s RIF in order to retain for herself Incentive Plan payments that would have been paid to Williams if Office Depot had not terminated him. At the time of his termination, Williams was working on obtaining approximately $30 million in potential business for Office Depot. Had he remained employed and had Office Depot closed on all of the business, Williams would have received significant bonus payments under his Incentive Plan. It is clear from the record that Pedler knew of the $30 million in potential business and knew that the majority of the credit for Office Depot’s receipt of the business would have gone to Williams had he remained at Office Depot.
More significantly, Pedler’s deposition testimony and a June 18, 2008 email she sent summarizing the RIF indicate that Pedler was aware of the fact that in Williams’ absence, some of the credit for closing on the $30 million in potential business would be directed her way. Thus, viewing the facts in the light most favorable to Williams, there is sufficient evidence in the summary judgment record to support an inference that Pedler acted in bad faith when she included Williams in the RIF because she was motivated by a desire to retain for herself bonus payments that would have been due to Williams. See Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 882 (1982); Fortune, 373 Mass. at 105 (“[T]he evidence and the reasonable inferences to be drawn therefrom support a jury verdict that [Fortune’s termination] the next business day after [the defendant] obtained a $5,000,000 order from First National was motivated by a desire to pay Fortune as little of the bonus credit as it could”).
However, Williams’ Fortune claim fails because he is unable to show that he suffered any damages as a result of Pedler’s bad faith. The Fortune doctrine requires that the plaintiff be deprived of a commission he already earned, even though it may not be due yet. See Struck v. Plymouth Mortgage Co., 414 Mass. 118, 120 (1993); McCone v. New England Telephone & Telegraph Co., 393 Mass. 231, 234-35 (1984). Here, Williams would earn a bonus under the Incentive Plan on the $30 million in potential business only if the following occurred: (1) Office Depot actually received *265 enough of the business so that Williams reached (2) eighty-five percent of his year-to-date sales quota and (3) ninety-four percent of his initial mark up quota under the Incentive Plan for the relevant quarter(s).
It is undisputed that Office Depot never received any of the potential business. Thus, none of the contingencies to Williams receiving a bonus under the Incentive Plan occurred before or after Office Depot terminated Williams, and Williams cannot show that he had earned any commission on the $30 million in potential business. See Harrison v. NetCentric Corp., 433 Mass. 465, 475 (2001) (“The Fortune doctrine does not protect interests contingent on an event that has not occurred . . .” because “(s)uch speculative interests are neither ‘clearly identifiable’ nor ‘clearly related to an employee’s past service’ ”); Tech Plus, Inc. v. Ansel, 1999 WL 482329 at *1-4, 14 (Mass.Super. 1999) [9 Mass. L. Rptr. 671] (where employee initiated contact with buyer but was allegedly forced out by employer before buyer placed order with employer, “he cannot contend that he was constructively terminated to deprive him of compensation or benefits that had been earned or were ‘on the brink’ of being earned”), reversed in part on other grounds, 59 Mass.App.Ct. 12 (2003). Because Williams has received from Office Depot “all sums due [him] for [his] employment” and “has offered no evidence that [he] suffered compensa-ble loss as a result of the breach [of the covenant of good faith and fair dealing],” his Fortune claim must fail. Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 388 (2005).
The plaintiffs Gram claim alleges that as a result of his termination, he lost Incentive Plan payments related to his past services regarding the Millipore contract and the $30 million in potential business. It is undisputed, however, that after Williams’ termination, the Millipore contract did not bring in sufficient business to raise his year-to-date sales quota to a level sufficient to entitle him to Incentive Plan payments had he still been employed at Office Depot as a BDM3.[1] Thus, in terminating Williams, Office Depot did not benefit from any windfall arising out of Williams’ past services, and his Gram claim may not proceed on the Millipore contract. See Gram v. Liberty Mut. Ins. Co., 391 Mass. 333, 335 (1984) (Gram II) (“Our goal is and has been simply to deny to Liberty any readily definable, financial windfall resulting from the denial to Gram of compensation for past services”). Similarly, Williams may not assert a Gram claim based on the $30 million in potential business he had developed before Office Depot terminated him. It is undisputed that Office Depot never in fact closed on any of the potential business, and, accordingly, it did not receive any windfall based on Williams’ past services as a result of his termination.[2] See id.
Accordingly, summary judgment on Williams’ breach of the covenant of good faith and fair dealing claim must be allowed.
B. Unjust Enrichment
“A person who has been unjustly enriched at the expense of another is required to make restitution to the other . . . The injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone’s reasonable expectations.” Salamon v. Terra, 394 Mass. 857, 859 (1985) (citations omitted). Williams claims that Office Depot was unjustly enriched when it terminated him without paying the bonus payments he was entitled to receive under his Incentive Plan.[3] As discussed above, however, Williams was not in fact entitled to any bonus payments for work he had already performed for Office Depot. The Millipore contract did not produce sufficient business to trigger bonus payments under the Incentive Plan, and none of the $30 million in potential business that Williams developed ever came to fruition. Williams could not have had any reasonable expectation of receiving payments for his past services, and his termination therefore did not defeat any reasonable expectations. See Salamon, 394 Mass. at 859. Summary judgment must thus enter in favor of Office Depot on Williams’ unjust enrichment claim.
C. Age Discrimination
In Massachusetts, when a plaintiff has no direct proof to support his G.L.c. 151B discrimination claim, a court analyzes the claim pursuant to the three-stage order of proof established by the United States Supreme Court. See Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The first stage requires the plaintiff to establish a prima facie case of discrimination which will create a presumption of discrimination. See id. In the second stage, the employer may rebut the presumption by articulating and supporting with credible evidence a nondiscriminatoiy reason for its employment decision. See id. at 116-17. Finally, in the third stage, the plaintiff must persuade the fact finder that the employer’s articulated nondiscriminatoiy reason is a pretext for discrimination, and that the employer’s decision was instead based on unlawful discrimination. See Abramian, 432 Mass. at 117; Brunner v. Stone & Webster Eng’g Corp., 413 Mass. 698, 700 (1992).
In a reduction in force case, the plaintiff establishes a prima facie case of discrimination — thereby satisfying his stage one burden and creating a rebuttable presumption of discrimination — by producing evidence that: (1) he is a member of a class G.L.c. 151B protects; (2) he performed his job satisfactorily; (3) he was terminated; and (4) his termination “occurred in circumstances that would raise a reasonable inference of unlawful discrimination.” Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 41, 45 (2005). Office Depot argues that Williams cannot satisfy the fourth element of his prima facie claim of age discrimination, but that even if he could, he cannot produce sufficient evidence *266 to show that Office Depot’s asserted reason for terminating Williams is pretextual.
Williams’ burden at stage one of the three-stage order of proof in discrimination cases “is not onerous,” and he has met that burden on the summary-judgment record. Sullivan, 444 Mass. at 40. Because this Court has concluded that Williams cannot sustain the burden imposed in the third stage, it will assume argu-endo that he can establish the first three elements of his prima facie case of discrimination. As to the fourth element of his prima facie case, Williams cites the fact that Pedler included both him and Komst in the RIF with a hope that thirty-seven year old Komst would fill the newly-created AM3H position, which would include some duties formerly assigned to Williams as a BDM3. This fact could lead a jury “guided by their collective day-today experiences with probability” to reasonably conclude that Pedler included Williams in the RIF essentially to make way for a younger employee, i.e., “that discrimination was more likely than not the reason for the plaintiffs layoff.” Sullivan, 444 Mass. at 46 n. 16. Thus, Williams has created a rebut-table presumption of unlawful age discrimination in the RIF. See Abramian, 432 Mass. at 116.
At the second stage, the burden shifts to Office Depot to rebut this presumption with a nondiscrimi-natoiy reason for terminating Williams that credible evidence supports. See Id. at 116-17. Office Depot asserts that, it terminated Williams due to his un-derperformance pursuant to the RIF, which was intended to cut costs. There is credible evidence in the record to meet Office Depot’s burden. See Sullivan, 444 Mass. at 51 (burden at stage two is of production, not persuasion). In 2006, Williams was ranked forty-fifth out of forty-six national BDM3s in terms of performance (forty-six being the lowest), while Towle, the other BDM3 at Office Depot’s Marlborough office, was ranked seventh. In 2007, Williams was ranked thirty-fifth out of forty-four and Towle was ranked first. Friedgen rated Williams as “Needs Improvement” both mid-year and end-of-year 2007, whereas he rated Towle as “Exceeds Expectations” and “Outstanding,” respectively, at those times, “Outstanding” being the highest rating possible. Further, Williams had been employed at Office Depot only since 2006; Towle joined the company eight years earlier in 1998. Un-derperformance and lack of seniority are both legitimate, nondiscriminatory reasons for terminating Williams. See Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 446-47 (1995), abrogated on other grounds by Abramian, 432 Mass. at 117-18; Marcano-Rivera v. Pueblo Int’l, Inc., 232 F.3d 245, 252 (1st Cir.2000). As for cost-cutting, the record indicates that the RIF saved Office Depot approximately $1 million in salary costs.
The next question is whether Office Depot has shown that Williams has no reasonable expectation of meeting his .burden at stage three, namely, of “persuading] the fact finder by a fair preponderance of the evidence that [Office Depot’s] asserted reasons were not the real reasons for” terminating him, McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 435 (1989), and that instead, Office Depot terminated Williams because of age discrimination, see Abramian, 432 Mass. at 117.
Williams claims that Office Depot’s assertion of underperfórmance as a legitimate, nondiscriminatory reason for his termination is pretextual because both he and Komst received “Needs Improvement” ratings, but Komst was “slotted” into a new position that took on some duties previously assigned to Williams. While it is true that “[t]he most probative means of establishing that the plaintiffs termination was a pretext for [age] discrimination is to demonstrate that similarly situated [younger] employees were treated differently,” Williams and Komst were not similarly situated. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129 (1997). To compare Office Depot’s treatment of himself and Komst, Williams must show that he and Komst were similarly-situated “in terms of performance, qualifications and conduct, ‘without such differentiating or mitigating circumstances that would distinguish’ their situations.” Id. at 130 (citation omitted). Williams and Komst must be similarly-situated “in all relevant aspects.” Id. at 129 (citation omitted).
There is no genuine issue of material fact that this is the case here. The record shows that Komst had been employed with Office Depot ten years longer than Williams, and that he held a higher job position than Williams at the time of the RIF, and, therefore, they were not similarly-situated “in all relevant aspects.” Office Depot’s failure to compare the two therefore does not render pretextual its assertion of Williams’ underperformance as a basis for treating him differently than Komst. See Romero v. UHS of Westwood Pembroke, Inc., 72 Mass.App.Ct. 539, 545 (2008).
Williams also claims that Office Depot’s asserted reason for the RIF, cost-cutting, is pretextual because it paid Komst a higher salary as AM3H than it paid Williams as BDM3 and because it continued to post open sales positions despite the RIF. As noted, while Kornst’s AM3H salary was higher than Williams’ BDM3 salary, Office Depot saved money by eliminating two jobs and creating one new job. Further, the record reflects without contradiction that the RIF saved Office Depot approximately $1 million in salary costs. One of the two specific sales positions Williams notes was posted after the RIF is the AM3H position, which the summary judgment record reflects was in fact a cost-saving measure. The other is a BDM3 position the same position Williams held at the time Office Depot terminated him — covering Connecticut, which Office Depot posted three-and-a-half months after the RIF. The record is uncontradicted that Office Depot created this BDM3 position for a specific employee who wished to be demoted from DSM for personal reasons. The *267 employee’s DSM position was then eliminated. The other sales positions that Williams cites are customer service jobs or sales jobs in other regions of the country, which do not relate to Office Depot’s cost-cutting in the New England region.
The summary judgment record is barren of any evidence suggesting that age played a factor in his inclusion in the RIF. It is undisputed that neither Pedler nor anyone else at Office Depot made a comment regarding Williams’ age or any other employee’s age. Further, the worksheet that Office Depot prepared listing the ages of the employees eligible and selected for the RIF indicates that Office Depot terminated six employees forty and over and five employees under forty. Of the employees eligible for the, RIF but not terminated, an equal number were forty and over and under forty. Williams, therefore, has failed to submit sufficient evidence to create a genuine issue of fact that it is more likely than not that Office Depot’s asserted bases for terminating him were pretextual. Compare Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 672 (1998) (No remarks concerning age and no apparent connection between the [performance] evaluations and the plaintiffs age. “The plaintiffs evidence of disparate treatment is anecdotal at best, and there is no evidence of deviation from normal management procedures connected to age in [defendant’s] treatment of the plaintiff’), and Tardanico v. Aetna Life & Cos. Co., 41 Mass.App.Ct. 443, 450 (1996) (“When [the employee’s] submission on summary judgment is distilled, nothing beyond the [ambiguous] comments discussed and his own age suggest that the reasons given by [the employer] for discharging him are a pretext”), with Blare, 419 Mass. at 447 (employee established genuine issue of material fact regarding pretext where record included evidence of prima facie discrimination claim, supervisor’s three remarks about employee’s age, and disparate treatment of employee).
While the Supreme Judicial Court has instructed that summary judgment is generally disfavored in discrimination claims because intent is a factual issue, see Blare, 419 Mass. at 439, it has also stated that “[w]here a defendant’s motion for summaiy judgment demonstrates that the plaintiffs evidence of intent, motive, or state of mind is insufficient to support a judgment in plaintiffs favor, we have upheld summaiy judgment in favor of defendants.” Id. at 440; see also Brunner, 413 Mass. at 703. This is such a case. Accordingly, because Williams will be unable to satisfy his burden of persuasion in stage three of the order of proof applied to his claim, Office Depot is entitled to summaiy judgment on Williams’ age discrimination claim.
ORDER
For the foregoing reasons, it is hereby ORDERED that Office Depot’s motion for summary judgment be ALLOWED on all counts of Williams’ complaint.

 Office Depot asserts that Williams’ yearly sales quota was examined on a quarterly basis to determine whether he was entitled to bonus payments under his Incentive Plan. Williams attempts to show that there is a dispute regarding his sales quota, but his deposition testimony fails to establish a genuine issue of material fact.

 Further a Gram claim is based on the employer’s termination of the employee without good cause. See Gram I, 384 Mass. at 672. Here, Office Depot’s stated reason for the RIF was to cut costs, which provides good cause for an employee’s termination. See York, 66 Mass.App.Ct. at 618. Williams disputes Office Depot’s cost-cutting reason by citing Komst’s new AM3H salary, which was $13,000 more than Williams’ base BDM3 salary. Although Office Depot paid Komst more than Williams, it actually saved money overall by eliminating two jobs and creating one new job which paid Komst less than he had previously been paid as a DSM.

 Williams’ unjust enrichment claim is an alternative theory of recovery to his implied covenant of good faith and fair dealing claim. See Scannell v. Attorney Gen., 70 Mass.App.Ct. 46, 53 (2007).