NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12410

PHONE RECOVERY SERVICES, LLC,[1] vs.  VERIZON OF
NEW ENGLAND, INC., & others.[2]


Suffolk.     February 5, 2018. - August 7, 2018.

Present:  Gants, C.J., Gaziano, Budd, & Cypher, JJ.


Massachusetts False Claims Act.  Telecommunications.  Practice,
    Civil, Standing, Motion to dismiss.  Jurisdiction.
    Statute, Construction.  Words, "Relator."



Civil action commenced in the Superior Court Department on
January 31, 2014.

After transfer to the business litigation session, a motion
to dismiss was heard by Edward P. Leibensperger, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.

_____

[1] On behalf of itself and the Commonwealth.

[2] All subsidiaries and related entities of Verizon of New
England, Inc.; XO Massachusetts, Inc., and all subsidiaries and
related entities; United Business Telephone, Inc., doing
business as Century Link, doing business as Qwest, and all
subsidiaries and related entities; YMAX Communications Corp.,
and all subsidiaries and related entities; Paetec
Communications, Inc., and all subsidiaries and related entities;
Comcast Business Communications, LLC; and John Does Nos. 1
through 75.

David H. Rich (Christopher Weld, Jr., & Alycia Kennedy also present) for the plaintiff.

Gregory L. Skidmore, of North Carolina (William A. Worth, Laura Steinberg, David B. Chaffin, & J. William Codinha also present) for Verizon of New England, Inc., & others.

Jonathan G. Cedarbaum, of the District of Columbia, Steven P. Lehotsky, & Janine M. Lopez, for Chamber of Commerce of the United States of America, amicus curiae, submitted a brief.

BUDD, J.  The plaintiff, Phone Recovery Services, LLC (PRS), a New Jersey limited liability corporation, commenced this qui tam action on behalf of the Commonwealth against the defendants, Verizon of New England, Inc., and several other communication service providers, pursuant to the Massachusetts False Claims Act (act), G. L. c. 12, §§ 5A-5O.[3]  PRS claimed that the defendants failed to collect from their customers, and remit to the Commonwealth, a surcharge for 911 emergency telephone service (911 service surcharge), as required by G. L. c. 6A, § 18H.  In so doing, PRS alleged that the defendants knowingly provided false information to the Commonwealth to avoid certain financial obligations.  A Superior Court judge allowed the defendants' motion to dismiss on the basis that the 911 surcharge is a tax and that, as such, it is not subject to the

---

[3] A "qui tam" action "is an action brought by an informer sometimes called a 'whistle blower'" whose "motive is to expose and redress a wrong, generally a fraud or false claim against the government and also to collect his bounty for his action." Scannell v. Attorney Gen., 70 Mass. App. Ct. 46, 49 (2007), quoting J.R. Nolan & L.J. Sartorio, Equitable Remedies § 476A, at 139 (2d ed. 2003 & Supp. 2006).

act.  PRS appealed, and we transferred the case here on our own initiative.  Because we conclude that PRS, as a corporation, does not have standing to bring suit under the act, we remand the matter to the Superior Court for a judgment dismissing the case for lack of subject matter jurisdiction.[4]

Background.  The Commonwealth's enhanced 911 services are funded, in part, with a monthly surcharge paid by communication services customers.[5]  Pursuant to G. L. c. 6A, § 18H (a), "[t]here shall be imposed on each subscriber or end user whose communication services are capable of accessing and utilizing an enhanced 911 system, a surcharge in the amount of 75 cents per month."  Furthermore, that "surcharge shall be collected by the communication service provider and shall be shown on the subscriber's or end user's bill as 'Disability Access/Enhanced 911 Service Surcharge.'"  Id. Surcharges collected by the

---

[4] We acknowledge the amicus brief submitted by the Chamber of Commerce of the Unites States of America.

[5] The "[e]nhanced 911 service" is

"a service consisting of communication network, database and equipment features provided for subscribers or end users of communication services enabling such subscribers or end users to reach a [public safety answering point] by dialing the digits 911, or by other means approved by the [State 911 Department], that directs calls to appropriate [public safety answering points] based on selective routing and provides the capability for automatic number identification and automatic location identification."

G. L. c. 6A, § 18A.

providers are to be remitted "to the state treasurer for deposit in the Enhanced 911 Fund." G. L. c. 6A, § 18H (d). On the basis of its belief that the defendants were not meeting the statutory requirements to bill, collect, and remit the surcharges, and that this failure constituted a false claim pursuant to the act, PRS filed this complaint on behalf of itself and the Commonwealth.[6]

In the complaint, PRS averred, among other things, that the defendants engaged in a practice that has resulted in the undercollection, and underpayment to the Commonwealth, of the 911 surcharge. In particular, PRS focused on landline (i.e., nonmobile) telephone lines. Based on data from the Federal Communications Commission (FCC), PRS stated that in 2012, the Commonwealth anticipated collecting approximately $80 million per year in 911 surcharges, approximately $30.4 million of which would be from landlines (the remainder coming from mobile

---

[6] Phone Recovery Services, LLC (PRS), initially filed the complaint under seal and served it only on the Attorney General, as required by the Massachusetts False Claims Act (act): "When a relator brings an action . . . a copy of the complaint . . . shall be served on the attorney general . . . . The complaint shall be filed under seal and shall remain so for 120 days after service upon the attorney general." G. L. c. 12, § 5C (3). The Attorney General declined to take over the action, and PRS therefore proceeded on its own. See G. L. c. 12, § 5C (4) ("Before the expiration of the initial 120 day period, . . . the attorney general shall: [i] assume control of the action . . . or [ii] notify the court that [s]he declines to take over the action, in which case the relator shall have the right to conduct the action").

telephones).  PRS further stated that the Commonwealth "experienced an annual shortfall" in the collection of the 911 surcharge of approximately $36 million from landlines alone, again based on FCC data.[7]  If successful in its claims against the defendants, PRS is entitled to share in any proceeds recovered and collected.  See G. L. c. 12, § 5F (4) ("If the attorney general does not proceed with an action . . . , the relator bringing the action . . . shall receive an amount which the court decides is reasonable . . .").

The defendants moved to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).  In doing so, they raised four possible bases:  (1) PRS did not plead its claim under the act with the particularity required; (2) PRS does not meet the definition of "relator" and therefore cannot bring a claim under the act; (3) PRS's claim is precluded by the act's so-called "public disclosure bar;" and (4) PRS's claim is precluded by the act's so-called "tax bar."  The judge considered only the fourth issue, pertaining to the "tax bar," and after determining that PRS's claim was barred on that basis, he did not reach the other issues.  Although we agree with the

_____

[7] We need not go into detail regarding the projected amounts of 911 surcharges to be collected, what the Commonwealth actually collected, and any shortfall.  Suffice it to say that PRS alleges that the defendants purposely failed to provide accurate information to the Commonwealth and that the Commonwealth was thus unaware of any amounts not collected.

judge that the complaint must be dismissed, we do so, as noted above, for a different reason:  namely, that the court lacks subject matter jurisdiction.  See Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997) (appellate court may affirm on grounds other than those relied on by judge below).

Discussion.  Our consideration whether the court has subject matter jurisdiction depends, in this case, upon whether PRS has standing to pursue its claims.  Because "[t]he issue of 'standing' is closely related to the question whether an 'actual controversy' exists, . . . we have treated it as an issue of subject matter jurisdiction."  Doe v. Governor, 381 Mass. 702, 705 (1980).  In general,

> "[t]he question of standing is one of critical
> significance.  From an early day it has been an established
> principle in this Commonwealth that only persons who have
> themselves suffered, or who are in danger of suffering,
> legal harm can compel the courts to assume the difficult
> and delicate duty of passing upon the validity of the acts
> of a coordinate branch of government."  (Quotations and
> citation omitted).

Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998).

Furthermore, such issues "should be given priority -- since if there is no jurisdiction there is no authority to sit in judgment of anything else."  Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 778 (2000) (considering jurisdictional issues under Federal False Claims Act, including relator standing under art. III of United States

Constitution).  If a plaintiff lacks standing, the complaint must be dismissed.  See, e.g., Planning Bd. of Marshfield v. Zoning Bd. of Appeals of Pembroke, 427 Mass. 699, 703 (1998).

To determine whether PRS has standing, we look to the statute itself.  See, e.g., 81 Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700 (2012) (statute defines who has standing; under G. L. c. 40A, party must be "person aggrieved").  The act imposes liability on "[a]ny person" who defrauds the Commonwealth by certain delineated means.  See G. L. c. 12, § 5B (a) (setting forth various false or fraudulent claims for which person shall be liable).  The act also provides an incentive for an individual, referred to as a relator, with "direct and independent knowledge of information that an entity is defrauding the Commonwealth to come forward by awarding to such individuals a percentage of the Commonwealth's recovery from the defrauding entity."  Scannell v. Attorney Gen., 70 Mass. App. Ct. 46, 48 (2007).  To be entitled to a recovery, "an individual in possession of such knowledge must attain the status of a 'relator' by filing suit against the defrauding entity in Superior Court in the name of the Commonwealth or a subdivision thereof" (citation omitted).  Id. at 48-49.

The question of standing, therefore, turns on whether PRS is a "relator."  Other than the Attorney General, only a

relator, defined as "an individual," may bring an action under the statute. See G. L. c. 12, § 5A. See also G. L. c. 12, § 5C (2) ("An individual, hereafter referred to as relator, may bring a civil action in superior court . . . on behalf of the relator and the commonwealth . . ."). The heart of the issue here is whether PRS is an "individual" for purposes of the statute. We conclude that it is not.

Although the statute does not include a definition of the word "individual," it does include a definition of the word "person." Pursuant to the statute, a "person" is "a natural person, corporation, partnership, association, trust or other business or legal entity." G. L. c. 12, § 5A. By that definition, PRS is a "person," but, as the defendants note, the Legislature expressly did not use the word "person" to define "relator" or, importantly, to identify who could bring an action pursuant to the statute. If the Legislature had intended to provide both natural persons and corporations with a right of action, it would have simply used the word "person," a defined term, in defining "relator." It did not do so. Rather, the statute defines "relator," as previously noted, as "an individual who brings an action under [G. L. c. 12, § 5C (2)]" (emphasis added). G. L. c. 12, § 5A.

The use of the word "person" in other sections of the statute further highlights the distinction between "person" and

"individual."  Section 5B, for example, refers to a "person" who violates the statute.  In that context, it makes perfect sense that either a natural person or a corporation (or any of the other entities included in the definition of the word "person") could violate the statute.  If the Legislature had intended the same to apply to a relator, it could have defined "relator" as a "person," not an "individual."  See Commonwealth v. Gagnon, 439 Mass. 826, 833 (2003), quoting 2A N.J. Singer, Sutherland Statutory Construction § 46.06, at 194 (6th ed. rev. 2000) ("where the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded").  Similarly, § 5N, which addresses, among other things, the Attorney General's authority to demand certain documentary evidence relevant to a false claims investigation, also refers to a "person."  See, e.g., G. L. c. 12, § 5N (1). The use of the word "person" in this context also makes logical sense where either a natural person or a corporation might be in possession of such information.

   Notwithstanding the distinct uses of the terms "individual" and "person" in the statute, PRS maintains that it is a relator. On the basis that there is little decisional law addressing the act, PRS urges us to look to the analogous Federal False Claims Act (FCA), 31 U.S.C. §§ 3729 et seq., on which the act is modeled.  See Scannell, 70 Mass. App. Ct. at 49 n.4 (because

there is little decisional law interpreting act and scant legislative history, court looked for guidance to cases and treatises interpreting FCA). However, this course does not aid PRS.

PRS is correct that both natural persons and corporations may pursue claims pursuant to the FCA. See, e.g., United States, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Baxter Healthcare Corp., 772 F.3d 932, 939-942 (1st Cir. 2014) (action by corporate relator precluded action by individual relators); United States, ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 15-16 (1st Cir. 2009), cert. denied, 561 U.S. (2010) (relators were natural persons); United States of Am., ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 647 (D.C. Cir. 1994) (corporate relator). Unlike the act, however, the FCA uses the word "person," not "individual," to describe who may act as a relator. The FCA provides that "[a] person may bring a civil action . . . for the person and for the United States Government" (emphasis added). 31 U.S.C. § 3730(b)(1). Although the word "person" is not specifically defined in the FCA, as it is in the act, it is defined generally for Federal statutory construction purposes to include both natural persons and corporations. See 1 U.S.C. § 1 ("the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as

individuals").  On the other hand, the act, as noted above, specifically defines the word "person," and does so to include corporations, yet then uses the word "individual," not "person," to define a relator.  For purposes of determining who is a relator under the act, this is no small difference.

Having determined that "individual" means an individual person, and that PRS is not such an individual, we conclude that PRS does not qualify as a relator for purposes of the act.  PRS thus has no standing to bring this action, and we, in turn, have no jurisdiction to consider anything further.  "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Vermont Agency of Natural Resources, 529 U.S. at 778-779, quoting Ex parte McCardle, 7 Wall. 506, 514 (1868).[8]

---

[8] PRS takes the position that it can cure its standing problem by filing a second amended complaint naming a new, individual plaintiff.  In the trial court, before the defendants filed their motion to dismiss, PRS filed a motion for leave to file a second amended complaint in which PRS intended to substitute Roger Schneider, whom PRS refers to as its managing member, as the plaintiff.  The defendants argued below, and maintain now, that the act precludes adding a plaintiff, as it provides that "[w]hen a relator brings an action pursuant to this section, no person other than the attorney general may intervene or bring a related action based on the facts underlying the pending action."  G. L. c. 12, § 5C (6).  A judge denied the motion without prejudice and noted that, depending on the resolution of the then-pending motion to dismiss, the judge would hold a hearing on whether to allow the motion for leave to

Conclusion.  For the foregoing reasons, we remand the matter to the Superior Court for a judgment dismissing the case for lack of subject matter jurisdiction.

So ordered.

---

file a second amended complaint.  No further proceedings occurred because the motion to dismiss was allowed.

We are skeptical of the defendants' argument pursuant to § 5C (6), which they refer to as the "first to file bar."  As PRS notes, if it is not a proper relator and the complaint is dismissed on that basis, then no relator has yet brought an action and a new complaint from an individual plaintiff would not be problematic.  Indeed, "[a] complaint that is dismissed for lack of jurisdiction is not an adjudication on the merits. . . .  It is thus inappropriate to attach preclusive effects to the dismissal beyond the matter actually decided -- the absence of subject matter jurisdiction" (citation omitted).  Bevilacqua v. Rodriguez, 460 Mass. 762, 780 (2011).